**WELLINGTON INTERNATIONAL COMMERCE CORP., Plaintiff,**

v.

**Gary RETELNY, Saul Retelny, Retelny & Co., S.A., Alejandro Lacayo, and Shearson Lehman/American Express, Inc., Defendants.**

No. 88 CIV 8619 (LBS).

United States District Court,
S.D. New York.

Dec. 28, 1989.

844

Tenzer, Greenblatt, Fallon & Kaplan New York City (Edward L. Sadowsky, Fredda L. Plesser, of counsel), for plaintiff.

Mandell & Zaroff, Gary Retelny and Retelny & Co., S.A. New York City (Richard Zaroff, of counsel), for defendants.

Office of the General Counsel, Shearson Lehman Hutton Inc., Saul Retelny, Alejandro Lacayo, and Shearson Lehman/American Express, Inc. New York City (Harry D. Frisch, Bari Jane Wolfe, Edward A. Smith, Joseph C. Pickard, of counsel), for defendants.

## OPINION

SAND, District Judge.

Plaintiff Wellington International Commerce Corp. ("Wellington"), a Panamanian corporation, provided defendant Gary Retelny with over $500,000 to invest in securities in the United States. At Gary Retelny's direction, Wellington first opened a brokerage account at Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ") and executed trades with Alejandro Lacayo. When Lacayo left DLJ to take a management position in the Miami office of Shearson Lehman/American Express, Inc. ("Shearson")[1], Wellington opened a brokerage account at Shearson and executed trades with Saul Retelny, Gary's father and a broker at Shearson. Wellington asserts claims against these defendants under sections 206 and 215 of the Investment Advisors Act, 15 U.S.C. §§ 80b–6, 80b–15, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), and for breach of fiduciary duty. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1332[2] and under the principles of pendent jurisdiction. Gary Retelny moves this Court pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) for an order dismissing the amended complaint for failure to plead fraud with particularity and for failure to state a claim upon which relief may be granted. Shearson, Lacayo and Saul Retelny (the "Shearson defendants") also move this Court for an order dismissing the amended complaint pursuant to Fed.R. Civ.P. 9(b) and 12(b)(6), or, in the alternative, an order staying this action and compelling arbitration pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1–14, and to recover costs pursuant to Fed.R. Civ.P. 11.

A court should not dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6) unless it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

1. Defendant's attorney asserts that this suit should name Shearson Lehman Hutton, Inc. as a defendant rather than Shearson Lehman/American Express, Inc. All references in this opinion to the Shearson defendant apply to whichever corporate entity is appropriate, and plaintiffs should amend their complaint if they wish to name Shearson Lehman Hutton, Inc. as a defendant.

2. The amended complaint also names as a defendant Retelny & Co., S.A., a Panamanian corporation. At oral argument, plaintiff's attorney acknowledged that Retelny & Co., S.A. had not been properly served and withdrew the claims against that defendant. Therefore, the diversity jurisdiction of this Court is not disputed.

41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). In deciding a motion brought under Rule 12(b)(6), a court may consider only matters contained within the complaint; if the parties present any affidavits to the court, then the motion is transformed into a motion for summary judgment. At oral argument, the defendants, as the moving parties, refused the opportunity to convert their motions to motions for summary judgment pursuant to Fed.R.Civ.P. 56. Therefore, in deciding those portions of the motions that seek relief under Rules 9(b) and 12(b)(6), this Court will not consider any of the affidavits submitted by the parties or any of the arguments in their briefs that rely on such additional facts.

Wellington's First Claim alleges that Gary Retelny "by use of instrumentalities of interstate commerce employed a scheme to defraud plaintiff and engaged in a course of conduct which operated as a fraud and deceit upon plaintiff" by executing "frequent excessive and highly speculative trades with plaintiff's funds in accounts maintained with defendant Shearson and conceal[ing] same from Wellington." Amended Complaint ¶¶ 13, 14. Wellington also alleges that "[t]he trades were made by Shearson's employee, defendant Saul Retelny, who on information and belief, rebated all of the commissions earned by him to his son Gary Retelny and concealed same from Wellington." Amended Complaint ¶ 15. Plaintiff's Second Claim alleges that Gary Retelny breached the fiduciary duty he owed to Wellington, and the Third Claim asserts liability against the Shearson defendants for aiding and abetting Gary Retelny in the commission of the offenses alleged in the first two claims.

■ The First Claim seeks relief under two sections of the Investment Advisers Act. Section 206 makes it unlawful for any investment adviser "to employ any device, scheme or artifice to defraud ... [or] to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b–6. Section 215 provides that contracts whose forma-

tion or performance would violate the Investment Advisers Act "shall be void ... as regards the rights of" the violator and knowing successors in interest. 15 U.S.C. § 80b–15. In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Supreme Court held that the Investment Advisers Act creates only a limited private right of action to void a contract with an investment adviser and does not create any other legal or equitable remedies. Any contract which violates section 206 is void under section 215, and "the rescinding party may of course have restitution of the consideration given under the contract, less any value conferred by the other party." *Id.* at 24 n. 14, 100 S.Ct. at 249 n. 14. That relief "would not, however, include compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction." *Id.*

In its prayer for relief, Wellington seeks with respect to its First Claim under the Investment Advisers Act rescission of its agreement with Gary Retelny and "restitution of the sums entrusted to [his] care." To the extent Wellington seeks recovery for the diminution of value to its account, the motion to dismiss is granted. Wellington, however, does properly state a cause of action against Gary Retelny under the Investment Advisers Act for rescission of the agreement and restitution of any consideration paid, and the motion to dismiss that claim is denied.

■ Wellington in its Third Claim also seeks relief from the Shearson defendants as aiders and abettors to the fraudulent conduct alleged against Gary Retelny under the Investment Advisers Act. It is clear from the Supreme Court's opinion in *Transamerica* that the Investment Advisers Act only provides a private cause of action for rescission of the contract and recovery of the consideration paid to Gary Retelny. The traditional contract remedy of rescission does not include a tort claim against other entities who are not parties to the contract. While the Shearson defendants may have aided and abetted Gary

Retelny in the alleged fraudulent acts, none of the recoverable consideration was paid to any of the Shearson defendants. We therefore grant the motion by the Shearson defendants to dismiss the claims against them for aiding and abetting Gary Retelny in his violation of the Investment Advisers Act.

We deny the motions of Gary Retelny and the Shearson defendants to dismiss pursuant to Rule 9(b) the claims for liability under the Investment Advisers Act for failure to plead fraud with particularity. Paragraphs 13–15 of the Amended Complaint provide sufficient allegations to withstand such a motion. We also deny the motions to dismiss the claims against Gary Retelny for breach of fiduciary duty and against the Shearson defendants for aiding and abetting that breach of duty.

■ Finally, we address the motions to dismiss the Fourth Claim, the RICO claim. To survive a motion to dismiss, the plaintiff must allege with particularity "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). We find that the allegations in paragraph 21 of the amended complaint satisfy the requirements of Rule 9(b). *See Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988) ("In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of these items was false and misleading.... The plaintiff must specify who made the allegedly false statements and the time and place such statements were made."). We also find that the allegations of mail fraud satisfy the continuity and relationship elements of the pattern requirement of RICO. In *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989), the Second Circuit held that a RICO pattern does not include two or more isolated or sporadic predicate acts, but that plaintiffs are not required to plead "an ongoing scheme having no demonstrable ending point." *Id.* at 1391. Plaintiff's allegations of eighteen mailings that falsely overstated the value of its account are sufficiently

related and continuous to indicate a RICO pattern. We also find that plaintiff has adequately alleged the existence of a RICO enterprise involving interstate commerce and that the mailings were sufficiently part of the fraudulent scheme to constitute mail fraud. *See United States v. Grossman*, 843 F.2d 78, 86 (2d Cir.1988). Finally, the Shearson defendants argue that the plaintiff has not alleged that the Shearson defendants engaged directly in the predicate acts of mail fraud. However, Wellington has clearly alleged that the Shearson defendants participated in the fraudulent scheme and that it was foreseeable that the scheme would involve the use of the mails. *See United States v. Hasenstab*, 575 F.2d 1035, 1039 (2d Cir.1978); *see also United States v. Martino*, 648 F.2d 367, 394 (5th Cir.1981). We also reject the Shearson defendants' argument that the RICO statute is unconstitutionally vague. The motions to dismiss the RICO claims are denied.

Finally, the Shearson defendants seek an order compelling arbitration of Wellington's claims. Wellington signed two agreements with Shearson. The Customer's Agreement, paragraph 13, provides that:

any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration ... This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.

Notice of Motion to Dismiss, or in the alternative, to Stay and Compel Arbitration, Exhibit 3. The Commodity Account Agreement provides that "[a]ny controversies arising out of or relating to any of my accounts, to transactions with you and/or your employees and/or agents for me or to this agreement or the breach thereof, shall be settled by arbitration ..." *Id.*, Exhibit 4. Wellington argues in opposition to the motion to compel arbitration that (1) the claims in the amended complaint are outside the scope of the arbitration agreement and (2) that the Investment Advisers Act claim is expressly exempt as a claim arising under the federal securities laws.

■ Sections 2 and 3 of the United States Arbitration Act, 9 U.S.C. §§ 2, 3, express a clear federal policy favoring the enforcement of agreements to arbitrate. To construe the scope of an arbitration agreement, a court must apply ordinary principles of contract law, and "any doubts concerning the scope or arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). We find that the allegations in the amended complaint that the Shearson defendants aided and abetted Gary Retelny in fraudulent activity and breach of fiduciary duty by rebating commissions does "aris[e] out of or relat[e] to" plaintiff's brokerage account. Since we granted the motion to dismiss the claims against the Shearson defendants for aiding and abetting the Investment Advisers Act claims, we do not consider whether those claims are covered by the arbitration agreement. We also note that the RICO claims are arbitrable, *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and do fall within the scope of the agreement.

In sum, the motion to dismiss the First Claim is granted only to the extent the plaintiff seeks relief beyond rescission of the agreement and restitution of any consideration paid. The motion to dismiss the other claims against Gary Retelny is denied. We grant the motion to dismiss the claims against Shearson, Lacayo and Saul Retelny for aiding and abetting Gary Retelny's violation of the Investment Advisers Act. The other claims against Shearson, Lacayo and Saul Retelny are stayed pursuant to 9 U.S.C. § 3, and the plaintiff is directed to submit those claims to arbitration. The request for sanctions under Fed. R.Civ.P. 11 is denied. The parties are to advise the Court in writing by January 22, 1990 as to how they intend to proceed with the remaining claims against Gary Retelny.

SO ORDERED.